# IN THE UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 11-83639-TBB13 |
| LYNDA G. CUNNINGHAM, ) | Chapter 13 |
| ) | |
|     Debtor. ) | |
| ) | |
| In the matter of ) | |
| ) | |
| James K. Cunningham, Jr., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | AP No.: 11-80154-TBB |
| ) | |
| Lynda G. Cunningham, ) | |
| ) | |
|     Defendant. ) | |

## MEMORANDUM OPINION

This adversary proceeding came before this Court for trial on September 10, 2012. The issue before the Court is whether a state court judgment against Debtor Lynda Cunningham is nondischargeable under the provisions of 11 U.S.C. § 523(a).

## FINDINGS OF FACT AND PROCEDURAL HISTORY

In order to assist him in the management of his affairs, Plaintiff James Cunningham, Jr. enlisted the assistance of his son, Glynn Cunningham, whom he trusted. As part of the sought assistance, James had over $140,000 of his monies placed into two (2) certificates of deposit showing James and Glynn as joint holders. In particular, on August 4, 2006, James and Glynn established a joint certificate of deposit ("CD") with AmSouth Bank (now Regions Bank) in the amount of $90,000. On May 17, 2007, at his

father's request, Glynn obtained another CD at the same bank in his name with his father as the payable on death ("POD") beneficiary using $54,000 he received from his father. On June 13, 2007, James cashed in the $90,000 CD plus interest and allowed Glynn to acquire a new CD in Glynn's name with James as the payable on death beneficiary. On August 16, 2007, without his father's knowledge or consent, Glynn changed the POD beneficiary on both CDs from James to his wife, Lynda Cunningham. Lynda accompanied Glynn to Regions Bank when he made these changes and was aware of what he was doing. James contends that he had only entrusted Glynn to manage his investments for him and did not authorize his removal from the accounts or the POD beneficiary change.

Glynn Cunningham died on April 9, 2008. On April 28, 2008, Lynda withdrew the money from both CDs (at the time, the balance was slightly over $140,000) and established new CDs solely in her name. On October 9, 2008, James' attorney sent Lynda a demand letter requesting the reimbursement of the funds. On October 10, 2008, the next day, Lynda withdrew all of the funds from Regions Bank and deposited them at a credit union solely in her name.

Later in 2008, James filed suit in the Circuit Court of Morgan County, Alabama. Although James lost in his attempt at a pre-judgment attachment of the monies in dispute, on September 3, 2010, he received a judgment against Lynda in the Morgan County Circuit Court in the amount of $140,613.44 for money had and received and unjust enrichment. Unfortunately for James, his daughter-in-law began spending these monies in October 2008, and by the September 3, 2010 judgment date, she had spent all of the monies that came from the CDs. After James filed a garnishment action against her,

Lynda filed a Chapter 13 petition on October 19, 2011. James filed an adversary proceeding on November 18, 2011, arguing that Lynda's debt should not be discharged pursuant to § 523(a)(2), (4), and/or (6).

## DISCUSSION

Section 523(a)(4) provides that an individual debtor may not discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[1] Section 523 must be narrowly construed, and the creditor has the burden of proving by a preponderance of the evidence that an exception to discharge applies. *See Bullock v. BankChampaign, N.A. (In re Bullock),* 670 F.3d 1160, 1164 (11th Cir. 2012); *Griffith v. United States (In re Griffith)*, 206 F.3d 1389, 1396 (11th Cir. 2000).

To determine whether a debt is dischargeable under § 523(a)(4), courts apply the federal common law definitions of larceny and embezzlement. *See, e.g.*, *Ormsby v. First Am. Title Co.* (*In re Ormsby)*, 591 F.3d 1199, 1205 (9th Cir. 2010); *Bankston Motor Homes v. Dennis (Matter of Dennis)*, 444 B.R. 210, 217 (Bankr. N.D. Ala. 2011). As one bankruptcy court explained, if state rather than federal definitions applied, "dischargeability might be rendered nonuniform because of the various state definitions." *Cent. Investors Real Estate Corp. v. Powell (In re Powell)*, 54 B.R. 123, 125 (Bankr. D. Or. 1983).

---

[1] The phrase "while acting in a fiduciary capacity" only modifies the "for fraud or defalcation" portion of § 523(a)(4) and not the "embezzlement, or larceny" part. *See, e.g.*, *Hosey v. Hosey (In re Hosey)*, 355 B.R. 311, 323 (Bankr. N.D. Ala. 2006); *In re Nee*, 50 B.R. 268, 272 (Bankr. D. Mass. 1985). Therefore, contrary to Lynda Cunningham's argument, a court need not find a fiduciary relationship in order to hold that a debt is nondischargeable on the basis of embezzlement or larceny. *See Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton*, 942 F.2d 551, 555 (9th Cir. 1991); *Applegate v. Shuler (Matter of Shuler)*, 21 B.R. 643, 644 (Bankr. D. Idaho 1982).

For purposes of nondischargeability under § 523(a)(4), "larceny" is defined as "the fraudulent taking and carrying away [of] property of another with intent to convert such property to the taker's use without the consent of the owner." *Dennis*, 444 B.R. at 217 (internal citations and quotations omitted); *see also* 4 *Collier on Bankruptcy* ¶ 523.10 (16th ed. 2009). "Embezzlement," on the other hand, is "the fraudulent appropriation of property belonging to another by a debtor who was entrusted with the property or into whose hands the property has lawfully come." *HOC, Inc. v. McAllister (In re McAllister)*, 211 B.R. 976, 988 (Bankr. N.D. Ala. 1997); *Collier* § 523.10. Embezzlement differs from larceny only in that the initial taking of the property was lawful, or with the owner's consent. *Schaffer v. Dempster (In re Dempster*, 182 B.R. 790, 802 (Bankr. N.D. Ill. 1995); *Collier* § 523.10.

As noted above, both embezzlement and larceny require that the creditor prove the property did not rightfully belong to the debtor. In cases like this one involving a state court judgment against the debtor in favor of the creditor on the issue of the ownership of the funds, bankruptcy courts may apply principles of issue preclusion to prevent a debtor such as Lynda Cunningham from arguing that she was the rightful owner of the money. *See, e.g.*, *Meis v. Meis (In re Meis)*, 200 B.R. 166, 169 (Bankr. N.D. Ohio 1996). Here, collateral estoppel is appropriate because the precise issue of the ownership of the funds was necessary to the state court's determination of James Cunningham's claims for money had and received and unjust enrichment and was actually litigated in that court. *See Gray v. Gray (In re Gray)*, 322 B.R. 682, 689 (Bankr. N.D. Ala. 2005) (citing *Wheeler v. First Ala. Bank of Birmingham,* 364 So. 2d 1190, 1199 (Ala. 1978)). The state court's judgment is therefore conclusive on this issue. *Id.*

4

Both larceny and embezzlement also require that the creditor prove fraudulent intent on the part of the debtor. *See OnBank & Trust Co. v. Sidell (In re Siddell)*, 191 B.R. 544, 552 (Bankr. N.D.N.Y. 1996). Fraudulent intent may be inferred from surrounding circumstances and the conduct of the accused. *See, e.g.*, *Kaye v. Rose (Matter of Rose)*, 934 F.2d 901, 904 (7th Cir. 1991); *In re Hendry*, 428 B.R. 68, 78 (Bankr. D. Del. 2010), *aff'd sub nom., Hendry v. Hendry*, BR 06-11364 BLS, 2012 WL 1118208 (D. Del. Apr. 3, 2012). Once the creditor presents circumstantial evidence of an intent to deceive, a debtor "cannot overcome that inference with an unsupported assertion of honest intent." *Hendry*, 428 B.R. at 78 (internal quotations and citations omitted). "Instead, the court should consider whether the [debtor's] actions appear so inconsistent with [her] self-serving statement of intent that the proof leads th[e] court to disbelieve the debtor." *Id.* (internal quotations and citations omitted).

In *Hendry*, the court held that the facts and circumstances of the case, including the ongoing litigation over ownership of the funds at issue there, were sufficient to infer fraud where the only evidence the debtor produced was a self-serving statement that he believed he was entitled to the money. 428 B.R. at 78; *see also Meis*, 200 B.R. at 170 (court found debtor's testimony that her mother-in-law intended to give her $92,000 after her separation from her husband incredible and excepted funds from discharge under § 523(a)(4)). In addition, fraudulent intent may be imputed to an "innocent" spouse where that spouse knows of the other spouse's misconduct and participates in the wrongful use or enjoyment of the property of another. *See, e.g.*, *Synod of South Atlantic Presbyterian Church v. Magpusao* (*In re Magpusao*, 265 B.R. 492, 498 (Bankr. M.D. Fla. 2001);

5

*Taylor Freezer Sales of Arizona v. Oliphant (In re Oliphant)*, 221 B.R. 506, 511 (Bankr. D. Ariz. 1998).

In this case, the Plaintiff has shown by a preponderance of the evidence, *see, e.g.*, *Bullock*, 670 F.3d at 1164, that Lynda Cunningham's conduct meets the requirements for nondischargeability on the basis of larceny under § 523(a)(4). The state court held that the funds belonged to James Cunningham, not Lynda, and that holding is conclusive on that issue. The evidence presented at trial shows that Lynda wrongfully obtained James' funds without his consent or knowledge and deposited them into her account with the intent to use them for herself.[2] The Court can easily infer the necessary fraudulent intent from Lynda's actions. First, the requisite intent is shown by Glynn's removing James from their joint accounts and making Lynda the POD beneficiary without James' consent, which is imputed to Lynda because she had actual knowledge of Glynn's actions and assisted him. Second, Lynda moved the monies to another bank to an account in only her name *after* receiving the demand letter from James' attorney for the return of the funds. Finally, while knowing of James' claim to the monies, Lynda spent the entire amount before James' state court action against her was resolved, even though she claimed monthly expenses of only about $2,000 in her Chapter 13 petition. *See Hendry*, 428 B.R.

---

[2] Even if the Court accepted Lynda's argument that she came into the funds lawfully, James' October 2008 demand for the funds put her on notice that there was, at the very least, a serious question as to her ownership of the funds, and the state court's decision definitively determined that the funds belonged to James, which would mean Glynn – with Lynda's knowledge, consent, and assistance – embezzled the funds within the meaning of § 523(a)(4) when they altered the structure of the CDs. Also, Lynda's transfer of the CD monies into accounts solely in her name would constitute larceny. As a practical matter, however, whether the conduct constitutes larceny or embezzlement is largely irrelevant for purposes of § 523(a)(4) "since either factual scenario can be used to prove that the debt is non-dischargeable; therefore, it would not benefit the debtor to show that he or she was guilty of larceny rather than embezzlement (or vice versa)." *Adamo v. Scheller (In re Scheller)*, 265 B.R. 39, 54 (Bankr. S.D.N.Y. 2001).

at 78. Lynda's testimony that she thought her father-in-law wanted her to have the money is simply not credible. *See Meis*, 200 B.R. at 170. Indeed, the only evidence she has presented in support of her position is a self-serving assertion of honest intent. *See Hendry*, 428 B.R. at 78. This assertion is insufficient to defeat the strong inference of fraudulent intent in this case. Accordingly, Lynda Cunningham's debt to James Cunningham, Jr. in the amount of $140,513.44 is nondischargeable under § 523(a)(4).[3]

**Dated: November 14, 2012**  /s/ **Thomas B. Bennett**
**Thomas B. Bennett**
**U.S. Bankruptcy Judge**

---

[3] Given the Court's ruling that Lynda Cunningham's debt is nondischargeable pursuant to § 523(a)(4), the Court need not consider the Plaintiff's arguments that it is nondischargeable pursuant to § § 523(a)(2) and (6), and those issues are therefore moot. Further, as the Court noted at trial, as long as this remains a Chapter 13 case, § 523(a)(6) does not apply. *See, e.g.*, *In re Roberts*, 366 B.R. 200, 204-05 (Bankr. N.D. Ala. 2007).